### GREENWALT *v.* TUCKER and others.*

(*Circuit Court, E. D. Missouri.* March 27, 1882.)

1. PRACTICE—TRIAL UPON AGREED STATEMENT OF FACTS—FRAUD ON JURISDICTION—NEW TRIAL.

A new trial may be granted at the instance of a defendant against whom judgment has been rendered in a case tried upon an agreed statement of facts, upon proof of evidence having been brought to his knowledge after the trial, which he could not have previously discovered by the use of due diligence, showing the perpetration by the plaintiff of a fraud on the jurisdiction of the court.

2. SAME—JURISDICTION—FRAUD UPON.

The transfer by a blank deed *mala fide*, without consideration, of the title to land in one state to a citizen of another, for the purpose of bringing suit in a federal court, will not enable the grantee to maintain a suit in ejectment in such court.

Motion for a New Trial.

*Monk & Monk*, for plaintiff.

*Charles Gibson*, for defendants.

TREAT, D. J. This is an action of ejectment against three defendants, charging them with being in possession of the premises. There was a joint answer, in which there was no denial of the joint possession as averred; and hence the suggestion that the judgment for damages against all the defendants was erroneous, has no foundation in law or in the pleadings or in the facts agreed.

*Reported by B. F. Rex, Esq., of the St. Louis bar.

This case was heard on an agreed statement of facts, which has the force of a special verdict. The plaintiff contends that, therefore, nothing is open for consideration or review on this motion, except the conclusions of law upon such agreed statement. That point would be well taken if the motion embraced only what had heretofore been before the court, but it urges, supported by affidavits, that from facts brought to the knowledge of defendants since the trial, and which could not, by due diligence, have been previously ascertained, a fraud on the jurisdiction of the court had been perpetrated in this, to-wit: That the plaintiff had no interest in the controversy; that one Reinders, having the tax title in question, executed and acknowledged a deed in blank as to the grantee; that he left that paper with his attorney "for collection," (whatever that may mean;) that said attorney filled the blank with the name of the non-resident plaintiff for the mere purpose of bringing suit in her name in the United States court, she not having paid any consideration therefor. The question involved is not free from the embarrassments arising from several decisions, mainly concerning the transfer of promissory notes, etc. Under the judiciary act (1789) the transfer of such notes, etc., even *bona fide* and for value, was subjected to a restriction, in order to avoid an attempt to draw into the federal courts the adjudication of questions therein which could be as well and ought to be determined in the state courts, in which and under whose laws said contracts were made. Hence, that act denied to United States courts jurisdiction "of any suit to recover the contents of any promissory note or other chose in action in favor of an assignee, unless a suit might have been prosecuted in such court to recover the said contents if no assignment had been made, except in cases of foreign bills of exchange." Under that act there have been many decisions, which it is not necessary to review.

The act of 1875, which has in many respects enlarged the jurisdiction of United States courts to an almost indefinite extent, contains this provision:

"Nor shall any circuit or district court have cognizance of any suit founded on contract in favor of an assignee, unless a suit might have been prosecuted in such court, to recover thereon, if no assignment had been made, except in cases of promissory notes, negotiable by the law merchant, and bills of exchange."

The change in the language of the act of 1875, on the subject quoted, may be only another form of expressing, in the light of decisions, what had been held to be the true interpretation of the act

of 1789. However that may be, the various acts of congress, and the better decisions thereunder, look to the preservation of the constitutional rights of citizens, to a judicial determination of their controversies in the federal courts, when fairly entitled thereto, and to a prevention of fraudulent or other contrivances, whereby the federal should supersede, or be substituted for, the more rightful jurisdiction of state courts.

There are several cases in which it is held that a *bona fide* transfer for value, although made for the purpose of giving jurisdiction to a federal court, should be held valid for jurisdictional purposes. Some of these cases are noted in *Marion* v. *Ellis*, 10 Fed. Rep. 410. If any of said cases have gone so far as to hold that a formal transfer, without consideration, for the mere purpose of having a federal court obtain jurisdiction, this court cannot assent to such doctrine. None of those cases, however, rightly considered, can properly be held to advance such a rule. The ruling in this case does not cover cases of *bona fide* transfers for value. The rule as to promissory notes, etc., under the act of 1789, and as to contracts under the act of 1875, are especially suggestive as to actions in ejectment, wherein the rights of the parties are ordinarily dependent, if title is involved, upon local statutes. It is a familiar principle that on questions of title the federal courts follow the interpretation given to state statutes by the court of last resort in the state. Its interpretation becomes a rule of property, and may be considered conclusive, not as in cases under the law merchant. Why, then, should not the state courts decide what is peculiarly in their province, unless a non-resident, who, in good faith, has a case for adjudication, chooses to come into a federal court? Can a nominal grantee, who has no real interest in the controversy, and to whom the realty has been transferred only for the purpose of bringing, in his name, a suit in the federal court, escape the consequences of a plea in abatement, or of an issue in the nature of a plea in abatement, whereby it may be shown that he is not the real party in interest, and, further, that his formal relation to the controversy was solely to effect a fraud on the jurisdiction? Can it be that, under pretence of a constitutional right as to citizenship, such frauds can be successfully perpetrated? There is, and long has been, a statute of Missouri in the following words:

" Any conveyance of land made by a citizen or citizens of this state to a citizen or citizens of any of the states or territories of the United States, without a valuable or *bona fide* consideration, and for the purpose of, or with

the view of, giving jurisdiction to any of the courts of the United States, and thereby to harass the occupants thereof, shall be and the same conveyance is hereby declared inoperative," etc.

Of course, no state statute can deprive a citizen of any of his rights under the federal constitution and laws, and if the Missouri statute just quoted were the only authority on the question before this court, no special weight could be given thereto where real controversies exist between a citizen of Missouri and a citizen of another state. The statute in question, so far as quoted above, merely announces a recognized rule in the federal courts, and proceeds to affix consequences for the attempted fraud. With those consequences this court has in this case nothing to do. The sole question is whether the transfer by a blank deed, *mala fide*, without consideration, of the title to a parcel of land in Missouri, for the purpose of bringing suit in this court, will enable such a grantee to maintain an action of ejectment here? If such be permissible, then, despite constitutional and legal provisions and restrictions, nearly every controversy can, through fraudulent schemes, be absorbed in the federal vortex, to the great damage and possible ruin of the adverse party through extraordinary costs and expenses. A citizen of Missouri, resident on the Iowa border, or resident on the Arkansas border, the title to whose land his neighbor disputes, can have the cause tried in his county, where the witnesses reside and where the *locus in quo* is known, according to the state laws, which are controllable in every forum. Why, then, should he be dragged far away from his home to contest his rights at great expense in another forum, instead of having the controversy judicially determined where it can be properly and inexpensively investigated?

In the case now under consideration this court rules that the motion for a new trial should be granted, for the following reasons:

(1) That since the trial new testimony has been discovered, which by due diligence could not have been previously obtained.

(2) That the *prima facie* showing of the defendants is to the effect that a fraud on the jurisdiction of this court has been practiced. No court with jealous regard to its duties will permit itself to be an instrument of fraud.

If the judgment in this case were sought to be impeached by summary or plenary proceedings, the court would be bound to take cognizance thereof. It is not necessary in all cases to bring a bill in equity to have a judgment set aside by fraud, but where the injured party proceeds promptly, as by a motion for a new trial or otherwise, the court will entertain the question, granting to the respective par-

ties due opportunity to be heard. On the present motion the court must act from the evidence before it, which, if true, shows a fraudulent judgment.

Motion sustained.

McCRARY, C. J., concurs.